Angeline Denise Taylor CHILDRESS
b/n/f William Taylor,
Petitioner-Plaintiff,

v.

Michael Lynn CHILDRESS,
Respondent-Defendant.

Supreme Court of Tennessee.

Aug. 28, 1978.

A. D. Walker, Jr., Dyersburg, for petitioner-plaintiff.

J. Thomas Caldwell, Ripley, for respondent-defendant.

## OPINION

HARBISON, Justice.

In this case petitioner seeks to maintain a negligence action for personal injuries against her husband for an antenuptial tort. She was injured while he was operating an automobile on February 22, 1975. The parties were married on June 14, 1975. Suit was instituted about seven and one-half months later, on January 31, 1976.

Both the trial court and the Court of Appeals held that the action was barred under the rule of interspousal immunity and that respondent was entitled to summary judgment.

We granted certiorari to give further consideration to the issue. We emphasize at the outset that this case by no means involves the entire subject of interspousal immunity in tort but is limited specifically to the issue of torts committed before the parties entered into the marriage relationship.

We recognize, as did the courts below, that this subject has frequently been litigated in this state. Heretofore this Court has consistently construed the Married Women's Emancipation Act, T.C.A. § 36–601, first adopted in 1913, as not altering in any sense the common-law rules prohibiting personal tort actions between spouses. With regard to the specific subject at hand, antenuptial torts, the Court has twice so construed the statute, and has held that any claimed right of action in tort between the parties existing upon the date of their marriage was extinguished when they entered into that relationship. *Monk v. Ramsey*, 223 Tenn. 247, 443 S.W.2d 653 (1969); *Raines v. Mercer*, 165 Tenn. 415, 55 S.W.2d 263 (1932). Both cases involved personal injuries arising out of an automobile accident. If a different rule is to be adopted in the instant case, therefore, it will be necessary to overrule those two decisions.

As stated, in entering upon this inquiry, we limit our consideration entirely to the subject of prenuptial torts, because, both practically and conceptually, it seems to us that there may be differentiating factors between them and personal injury claims between spouses arising after they have entered into their marriage. With respect to post-nuptial torts, it has been consistently held in this state that no such right of action can exist or come into being because of the unique relationship between the parties. *See e. g., Wooley v. Parker*, 222 Tenn. 104, 432 S.W.2d 882 (1968); *Hance v. Haun*, 216 Tenn. 176, 391 S.W.2d 621 (1965); *Gordon v. Pollard*, 207 Tenn. 45, 336 S.W.2d 25 (1960); *Prince v. Prince*, 205 Tenn. 451, 326 S.W.2d 908 (1959). Further, it is obvious that many types of conduct that could be

found to be tortious in some settings might not be so considered in the intimacy or privacy of the home.

It has been recognized that once the marriage relation has been terminated by divorce, tort actions can be maintained between the former spouses for injuries inflicted after the entry of the divorce decree. *Brown v. Selby*, 206 Tenn. 71, 332 S.W.2d 166 (1960). There a man murdered his former wife, and an action for her wrongful death was allowed, even though the beneficiaries were children of the parties, the theory of the Tennessee Wrongful Death Act being that the right of action was that of the decedent which survived to her nearest kin.

It is difficult to distinguish the rights of the parties in the case of an antenuptial tort from those of persons who have been divorced and are no longer married. At the time of the alleged negligent act involved in the present case, there was no impediment whatever to the claim of the petitioner. Had she filed suit and obtained judgment before her marriage, we think that it would hardly be contended that the marriage itself extinguished the judgment.

It is, of course, possible to conceive of types of tort actions which might be so inconsistent with the marriage relationship that the very fact that the parties obtained a marriage license and went through the solemnities required by Tennessee law to enter into the marital status, T.C.A. §§ 36–401 et seq., could be said to effect at least an implied, if not an express, release of the tort claim. For example, we doubt that the courts would look with much favor upon an action for breach of promise of marriage or of seduction in cases where the parties had later married.

■ The Tennessee Married Women's Emancipation Act, T.C.A. § 36–601, is very broadly worded. In sweeping terms it removed the disability of coverture and its effects upon property rights of women. It was a major piece of legislation and had significant impact upon many pre-existing rules of the law of domestic relations, contracts, property and procedure. We are not inclined to give it a narrow or restrictive interpretation. *Robinson v. Trousdale County*, 516 S.W.2d 626 (Tenn.1974).

The principal portion of the statute is as follows:

"Married women are fully emancipated from all disability on account of coverture, and the common law as to the disability of married women and its effects on the rights of the property of the wife, is totally abrogated, except as set out in §§ 36–602, 36–603, and marriage shall not impose any disability or incapacity on a woman as to the ownership, acquisition, or disposition of property of any sort, or as to her capacity to make contracts and *to do all acts in reference to property which she could lawfully do, if she were not married,* but every woman now married, or hereafter to be married, shall have the same capacity to acquire, hold, manage, control, use, enjoy and dispose of, all property, real and personal, in possession, and to make any contract in reference to it, and to bind herself personally, and to sue and be sued with all the rights and incidents thereof, as if she were not married." T.C.A. § 36–601.

■ A right of action arising from negligence is, in a sense, a property right; it is a chose in action, a form of intangible personal property.[1] It seems to us that under the foregoing statute the marriage of a woman should not take away a property right of this nature, any more than it would extinguish a promissory note or other contractual indebtedness owed by one affianced party to the other.

---

1. *See O'Grady v. Potts*, 193 Kan. 644, 396 P.2d 285 (1964) (negligence claim constitutes chose in action as such is separate property of unmarried woman, not abolished upon her marriage). *Cf. Hux v. Russell*, 138 Tenn. 272, 276, 197 S.W. 865 (1917) (claim for tortious damage to realty held to constitute a chose in action and to pass as intestate personal property).

Shortly after the passage of the Married Women's Emancipation Act it was held that a tort claim by the wife against a third party belonged to her alone, and that she was entitled to pursue the action without joinder of her husband, as previously required by procedural rules. *Knoxville Ry. & Light Co. v. Vangilder,* 132 Tenn. 487, 178 S.W. 1117 (1915).

In the case of *Pearce v. Boberg,* 89 Nev. 266, 510 P.2d 1358 (1973), it was held that a claim for personal injury by a woman for prenuptial tort was her separate property and was not extinguished by her marriage to the alleged tortfeasor. Our examination of the language of the Tennessee statute constrains us to the view that this is the effect of its provisions, despite its interpretation to the contrary in earlier cases.

We recognize, as did the Supreme Court of Nevada, that the broad subject of interspousal immunity is a complex one. Comprehensive legislative study and possible revision of statutes dealing with tenancy by the entirety and the rights of judgment creditors and debtors, particularly with respect to exempt property, may need to be considered before general removal of interspousal immunity should be undertaken. With respect to personal injury claims based upon negligence existing prior to marriage, however, we do not believe that it can fairly be said that no "right of action" ever came into existence, nor can we read the language of the Emancipation Act to do anything other than preserve, rather than permit destruction of, such claims.

In this incident respondent had liability insurance to indemnify against the particular risk. However, we are not disposed to fashion a rule of law which would depend upon the existence or non-existence of insurance coverage, nor are we persuaded that this should be a determinative consideration from the standpoint of legal theory. *Prince v. Prince,* 205 Tenn. 451, 326 S.W.2d 908 (1959).

We do not readily depart from previous construction of an important stat-

ute. We recognize that departure or change is frequently better accomplished by legislative action than by the courts. *See Hamby v. McDaniel,* 559 S.W.2d 774 (Tenn. 1977); *Jones v. Black,* 539 S.W.2d 123 (Tenn.1976). Nevertheless from a re-examination of the language of T.C.A. § 36–601, we believe that it was intended to preserve a pre-existing right of action such as that involved here. Accordingly the decisions to the contrary in *Monk v. Ramsey* and *Raines v. Mercer, supra,* are overruled.

The judgment of the courts below are reversed and the cause is remanded to the trial court for further proceedings consistent herewith. Costs incident to the appeal are taxed to the respondent; all costs in the trial court will abide the result there.

HENRY, C. J., COOPER and FONES, JJ., and QUICK, Special Judge, concur.