Judith E. SWARTZ, Appellant,

v.

James M. SWARTZ, Pamela Van Beek and Casualty Reciprocal Exchange, Respondents.

No. WD 48494.

Missouri Court of Appeals, Western District.

Sept. 20, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 1, 1994.

Application to Transfer Denied Dec. 20, 1994.

William G. Cownie, Lee's Summit, for appellant.

Martin M. Montemore, Kansas City, for respondent James M. Swartz, Thomas R. Hill, Kansas City, for respondent Pamela Van Beek, Paul P. Hasty, Jr., Kansas City, for respondent Cas. Reciprocal Exchange.

Before HANNA, P.J., and BRECKENRIDGE and ELLIS, JJ.

BRECKENRIDGE, Judge.

Judith Swartz appeals from the trial court's order granting summary judgment in favor of James Swartz and Pamela Van Beek in a negligence action relating to criminal sexual abuse inflicted on Judith Swartz by Mr. Swartz, her adoptive father. Judith Swartz raises four points on appeal, alleging that the trial court erred in granting summary judgment because (1) the doctrine of parental immunity should not have been applied and (2) no evidentiary hearing was held on the motion for summary judgment. Judith Swartz further contends that the trial court erred in failing to grant her own motion for summary judgment because (3) all of the elements necessary to establish the commission of the tort of negligent infliction of emotional distress by Mr. Swartz were undisputed and (4) the evidence that Ms. Van Beek negligently failed to seek adequate medical care for Judith Swartz was overwhelming. The judgment is affirmed in part, reversed in part and remanded.

Judith Swartz was born on November 18, 1968, to Pamela Van Beek. James Swartz legally adopted Judith Swartz in September of 1976, prior to his marriage to Ms. Van Beek in November of 1979. The couple was divorced in April of 1983. On February 28, 1983, Mr. Swartz was convicted by a Clay County jury of sexually abusing Judith Swartz, for which he was later sentenced to a prison term of fifteen years. Judith Swartz testified at the trial that the acts of abuse began in November of 1979 and ended on September 27, 1982.

On November 17, 1992, Judith Swartz filed this action for damages against Mr. Swartz and Ms. Van Beek. In her first amended petition, Judith Swartz alleged as Count I that her mother negligently and carelessly provided supervision and care for her, negligently failed to warn her of the "dangers and character of her husband," and negligently failed to procure adequate medical care for her after a jury convicted Mr. Swartz of child sexual abuse. In Count II of her petition, Judith Swartz claimed that Mr. Swartz negligently allowed himself to be in her presence, negligently failed to remove himself from her presence, negligently failed to seek help from others for the purpose of protecting Judith Swartz from his abuse, and negligently failed to procure medical treatment for Judith Swartz after he was convicted of child sexual abuse. In Count III, Judith Swartz maintained that Mr. Swartz negligently inflicted emotional distress on her when he attempted to remove her by force from her home on October 18, 1982.

Each of the parties filed a motion for summary judgment. The trial court granted summary judgment in favor of Mr. Swartz and Ms. Van Beek on September 9, 1993. In its order, the trial court concluded that Mr. Swartz and Ms. Van Beek had "parental immunity for alleged acts or omissions which allegedly injured plaintiff on or before December 16, 1991." Judith Swartz now appeals the grant of summary judgment.

The standard for appellate review of a summary judgment is de novo. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). This court's criteria for ascertaining the propriety of summary judgment are the same as those used by the trial court when determining the propriety of sustaining the motion initially. *Id.* Summary judgment will be upheld on appeal if the reviewing court determines that the movant had a right to judgment as a matter of law and that no genuine issue of

material fact existed. *Rodgers v. Cza-manske,* 862 S.W.2d 453, 457 (Mo.App.1993).

### I.

Judith Swartz contends as her first point on appeal that the trial court erred in relying on the doctrine of parental immunity in granting the summary judgment motions of Mr. Swartz and Ms. Van Beek. Judith Swartz maintains that parental immunity should not apply because the policy behind the doctrine would not be advanced by its use in this case.

Parental immunity is a judicially-created doctrine first enunciated in the United States by the Mississippi Supreme Court in *Hewelett v. George,* 68 Miss. 703, 9 So. 885 (1891). The Mississippi court created the doctrine to prevent a minor daughter from suing her mother's estate for damages from psychological suffering and injury incurred when her mother had her incarcerated in an insane asylum for eleven days. The Mississippi Supreme Court based its creation of the doctrine on the premise that allowing minor children to sue their parents or their estates would disrupt family harmony to such an extent that it would be unacceptable from a public policy perspective. *Id.,* 9 So. at 887.

The parental immunity doctrine was adopted by the Missouri Supreme Court in *Baker v. Baker,* 364 Mo. 453, 263 S.W.2d 29 (1953).[1] The Supreme Court held in *Baker* that in the interest of preserving family harmony, a fifteen-month-old child could not sue her father for mere negligence arising from an auto accident. *Id.* 263 S.W.2d at 32. This initial formulation of the rule applied only to unintentional torts committed within the scope of "parental authority or duty." *Id.* at 31.

As the parental immunity doctrine evolved in Missouri, the Supreme Court began to create exceptions to the general rule that parents were immune to tort actions instituted by their children. In *Wurth v. Wurth,* 322 S.W.2d 745 (Mo. banc 1959), the Supreme Court ruled that parental immunity did not apply to the claims of minors emanci-

pated at the time of injury. *Id.* at 747. The next limitation of the parental immunity doctrine was delineated by the Supreme Court a year later, when the Court ruled that a deceased parent's estate could not claim parental immunity because the reasoning behind the doctrine, the preservation of family harmony, was no longer viable after the death of the parent. *Brennecke v. Kilpatrick,* 336 S.W.2d 68, 73 (Mo. banc 1960). Implementing the same logic, the Court further eroded the parental immunity doctrine with its decision in *Fugate v. Fugate,* 582 S.W.2d 663 (Mo. banc 1979), holding that a non-custodial parent was excluded from immunity because, in a post-dissolution setting, the family harmony had already been destroyed. *Id.* at 669.

In *Kendall v. Sears, Roebuck and Co.,* 634 S.W.2d 176, 178 (Mo. banc 1982), the Court clearly articulated that the parental immunity doctrine should be applied on a case-by-case basis. In conducting the case-by-case analysis, trial courts are to hold evidentiary hearings to determine whether the allowance of the action by the child against the parent would disrupt the tranquility of the domestic establishment or subvert parental control and discipline. *Id.* at 180.

On December 17, 1991, the Supreme Court abrogated the parental immunity rule established by *Baker.* In *Hartman by Hartman v. Hartman,* 821 S.W.2d 852 (Mo. banc 1991), the Court held that the parental immunity exception to the general rule of tort liability was no longer a viable doctrine, *id.* at 855–56, and adopted in its place a reasonable parent standard. *Id.* at 858. The Court explained that the policy of preserving family harmony was "less significant than the interest in the right of an injured child to recover for injuries," since damage to family harmony and relationships occurred at the time the wrong was committed. *Id.* at 855. The abrogation of the doctrine, though, was to have a prospective effect only:

> This holding shall apply only to those cases pending in the trial court in which a claim challenging and seeking the overturn of [the] parental immunity doctrine has

---

1. The first Missouri court to recognize and apply the doctrine of parental immunity was the

Springfield Court of Appeals in *Cook v. Cook,* 232 Mo.App. 994, 124 S.W.2d 675 (1939).

been timely raised as of the date of issuance of this opinion as well as to those cases in which appealable orders have been entered by the trial court and in which the aggrieved party (or parties) has preserved such issue in a timely manner for appellate review as of the date of issuance of this opinion and to causes of action that arise after the date of issuance of this opinion. *Id.* at 858. Judith Swartz's cause of action did not arise after the date of the issuance of *Hartman,* nor was it pending on December 17, 1991; therefore, her present action must fall under one of the pre-*Hartman* exceptions if she is to maintain her action.

As noted earlier in this opinion, prior to *Hartman,* the doctrine of parental immunity was not an absolute rule, but was to be applied only "when the court concludes that to hold otherwise would seriously disturb the family relations and thus be contrary to public policy." *Brennecke,* 336 S.W.2d at 70. As stated in *Brennecke,* "[t]he immunity of the parent usually has been predicated upon the premise that to allow such an action against a parent would either disrupt the tranquility of the domestic establishment or subvert parental control and discipline." *Id.* A cause of action by a minor against a parent could be maintained under the law as it existed before *Hartman* "if the reasons for its denial [were] no longer in existence." *Id.* at 73.

No Missouri case was cited, or found, which has addressed the application of the rule of parental immunity where a sexual abuse victim is suing the victim's parent for civil damages. Other jurisdictions have addressed this issue, though, and have found that the doctrine should not apply in cases involving claims of sexual abuse. In a recent decision, the Alabama Supreme Court determined that parental immunity did not apply to sexual abuse cases, as long as the evidence of sexual abuse was clear and convincing. *Hurst v. Capitell,* 539 So.2d 264 (Ala.1989). In *Hurst,* the court allowed an action by a minor against both her stepfather and her natural mother. The minor claimed damages from her stepfather for sexual abuse, and from her mother for allowing the abuse to occur. The court found that "[t]o leave children who are victims of such wrongful, inten-

tional, heinous acts without a right to redress those wrongs in a civil action is unconscionable, especially where the harm to the family fabric has already occurred through that abuse." *Id.* at 266. The Alabama Supreme Court reasoned that it was appropriate for the courts to modify the judicially-created doctrine because the doctrine had become unjust in its application. *Id.*

At least two other state courts and one federal court have come to the same conclusion. *See Doe by and through Connolly v. Holt,* 332 N.C. 90, 418 S.E.2d 511, 515 (1992) ("Where a parent has injured his or her child through a willful and malicious act [such as sexual abuse], any concept of family harmony has been destroyed. Thus, the foremost public purpose supporting the parent-child immunity doctrine is absent, and there is no reason to extend the doctrine's protection to such acts."); *Henderson v. Woolley,* 230 Conn. 472, 482, 644 A.2d 1303 (1994) ("Familial discord or dysfunction obviously exists where parental sexual abuse occurs. Therefore, the purpose of the preservation of family harmony cannot justify immunity in the case of sexual abuse of a child by a parent."); *Wilson by Wilson v. Wilson,* 742 F.2d 1004, 1005 (6th Cir.1984) ("[T]he common law parental immunity rule holds only insofar as it subserves 'the domestic peace and tranquility of the family,' and '[w]here the reason fails [due to sexual abuse] the rule should not apply.'" (quoting *Brown v. Selby,* 206 Tenn. 71, 332 S.W.2d 166, 169 (1960)).

Each of the cases cited from other jurisdictions involves a claim for damages based on the intentional act of sexual abuse, while the case at bar does not. Of these cases, *Hurst* provides the most guidance because it also includes a claim similar to those of Judith Swartz, because the minor child sued her mother for negligence in the mother's performance of her parental duties. *Hurst,* 539 So.2d at 265–66. The analysis of *Hurst* and the other cases persuades this court that the former doctrine of parental immunity should not apply automatically in negligence actions arising from the sexual abuse of a child, since the sexual abuse already would have disrupted the family harmony. As in *Hurst,* this court recognizes an

exception to the doctrine of parental immunity for a suit against a parent for failing to protect the child from sexual abuse, as well as against the parent perpetrating the abuse.

■ In analyzing the appropriateness of the application of the doctrine of parental immunity to the facts of this case, it is noted that there was no evidentiary hearing to determine if the maintenance of an action by Judith Swartz against her parents would disrupt the family harmony.[2] Although the Supreme Court has directed that an evidentiary hearing be conducted, *Kendall,* 634 S.W.2d at 180, the record shows no dispute concerning the facts relevant to the disruption of family harmony resulting from Judith Swartz's suit against Mr. Swartz. Mr. Swartz was arrested, charged, and convicted by a jury of the class B felony of the rape of Judith Swartz. He was sentenced to fifteen years in prison. Judith Swartz testified as a witness against Mr. Swartz in the criminal trial. Ms. Van Beek dissolved her marriage to Mr. Swartz two months after his sentencing, and custody of Judith Swartz was awarded to Ms. Van Beek following the dissolution of marriage. Considering these circumstances, the domestic tranquility of the home has clearly been destroyed as a matter of law, and will not be disturbed by Judith Swartz's action against Mr. Swartz. Nor will the policy behind the doctrine of parental immunity be advanced by its application in this case. Summary judgment in favor of Judith Swartz on Mr. Swartz's affirmative defense of parental immunity is appropriate.

■ On the other hand, it is more difficult to determine whether the maintenance of an action by Judith Swartz against Ms. Van Beek would destroy the peace and harmony of the family unit. As *Hurst* indicates, it is certainly possible for the parental immunity

exception to apply to a parent who has breached parental duties by failing to protect a child from sexual abuse. *Hurst,* 539 So.2d at 265–66. This court cannot determine, however, that the undisputed facts in the record are sufficient, as a matter of law, to justify an exception to the doctrine of parental immunity with regard to the cause of action against Ms. Van Beek. An evidentiary hearing is necessary to resolve the factual issues relevant to the determination of the impact Judith Swartz's action against Ms. Van Beek would have on the harmony of the family unit.

■ Mr. Swartz and Ms. Van Beek correctly note that even if parental immunity is not available to them, this court must affirm the trial court's award of summary judgment if the judgment can be sustained under any theory. *Rodgers,* 862 S.W.2d at 458. They assert that Judith Swartz's claims, if not barred by parental immunity, are barred by statutes of limitation.[3] The various statutes of limitation cited by the parties are §§ 516.120, RSMo 1986; 516.170, RSMo Cum.Supp.1993; 516.371, RSMo Cum.Supp. 1993; and 537.046, RSMo Cum.Supp.1993.

■ In determining which statute or statutes of limitation are applicable to Judith Swartz's claims, it is necessary to keep in mind the well-established rule that when several statutes address a particular subject, the most specific statute supersedes the more general statutes. *Kansas City Star Co. v. Fulson,* 859 S.W.2d 934, 942 (Mo.App.1993). Section 516.120(4), RSMo 1986, is the general statute of limitations for tort actions which provides a five-year statute of limitations for any "injury to the person . . . not arising on

---

**2.** No Missouri case has addressed whether finding that the conduct of one parent has disrupted the family harmony will result in an automatic exception from parental immunity permitting the maintenance of a suit by the child against the other parent. This issue is not reached, however, because the claims of Judith Swartz include events which occurred after the dissolution of the marriage of Mr. Swartz and Ms. Van Beek. Therefore, a separate analysis is required for each parent.

**3.** Judith Swartz asserts that Mr. Swartz and Ms. Van Beek failed to raise a statute of limitations defense. However, she is incorrect. Both Mr. Swartz and Ms. Van Beek properly pled the affirmative defense of statute of limitations. Moreover, this court must sustain the trial court's grant of summary judgment if it is possible to do so on any theory. *Rodgers,* 862 S.W.2d at 458. Therefore, in this case, it would not be crucial for the parties to have preserved such an issue on summary judgment.

contract...."[4] Section 516.170, RSMo Cum.Supp.1993, however, tolls the general tort statute of limitations for minors. Under § 516.170, RSMo Cum.Supp.1993, if a person is under the age of twenty-one at the time his or her tort cause of action accrues, the five-year period of § 516.120(4), RSMo 1986, does not commence running until the person reaches the age of majority, twenty-one. Section 516.170, RSMo Cum.Supp.1993; *J.D. v. M.F.,* 758 S.W.2d 177, 178 (Mo.App.1988).

If the only statutes applicable to Judith Swartz's claims are §§ 516.120, RSMo 1986, and 516.170, RSMo Cum.Supp.1993, it would appear that the claims are not barred by the statute of limitations. Mr. Swartz and Ms. Van Beek, though, maintain that there are more specific statutes which control. First, they cite § 516.371, RSMo Cum.Supp.1993, which provides a ten-year statute of limitations. Section 516.371, RSMo Cum.Supp. 1993, applies to personal injury actions caused by a person within the third degree of consanguinity who subjects the claimant to sexual contact. Second, it is argued that § 537.046, RSMo Cum.Supp.1993, bars Judith Swartz's claim. Section 537.046, RSMo Cum.Supp.1993, states that actions for damages caused by childhood sexual abuse must be brought within five years of the date the plaintiff turns eighteen or within three years of the date the plaintiff discovers the damage was caused by child sexual abuse, whichever is later.

▮ This court need not decide which statute, § 516.371, RSMo Cum.Supp.1993, or § 537.046, RSMo Cum.Supp.1993, is the more specific statute, or whether either statute extends beyond actions for damages caused by the commission of sexual abuse to claims for damages related to sexual abuse, such as Judith Swartz's claims for breach of a parental duty of care. These issues are not reached because neither statute can bar Judith Swartz's claims. Before § 516.371, RSMo Cum.Supp.1993, became effective on August 28, 1989, and § 537.046, RSMo Cum. Supp.1993, became effective on August 28, 1990, Judith Swartz had until five years after her twenty-first birthday to file claims against her parents. It is possible to shorten the statute of limitations applicable to an existing claim since there is no vested right in the maintenance of the statute in effect at the time a claim accrues. *Goodman v. St. Louis Children's Hosp.,* 687 S.W.2d 889, 891 (Mo. banc 1985). However, if an attempt is made to shorten the time for suing on existing claims, "those who have pending and unbarred claims at the time the new statute becomes effective must be afforded a reasonable time within which to file suit." *Id.* What constitutes a "reasonable time" under a statute shortening the limitation period can vary. *See* 51 Am.Jur.2d *Limitation of Actions* § 39 (1970) ("The reasonableness of each limitation prescribed by a statute shortening the period of limitation must be separately judged in the light of the circumstances surrounding the class of cases to which it applies....").

Section 516.371, RSMo Cum.Supp.1993, does not specify whether the limitation period of the statute is to be applied to claims existing at the time of adoption of the statute. Therefore, it clearly does not provide a "reasonable time" in which to file suit. Section 537.046, RSMo Cum.Supp.1993, states that it applies to any actions commenced on or after August 28, 1990, the effective date of the statute.[5] By making the effective date immediate, it does not offer a specific grace period governing claims which have accrued prior to the effective date of the statute.

The Missouri Supreme Court addressed the applicability of a similar statutes of limitations in *Goodman. Goodman* involved the

---

**4.** It has not been decided by a Missouri court whether a claim for damages for sexual contact is governed by § 516.120(4), RSMo 1986, the five-year statute of limitations applicable to general torts, or by § 516.140, RSMo 1986, the two-year statute of limitations applicable to battery. Such issue is not before this court, since Judith Swartz's amended petition does not include a claim against Mr. Swartz for personal injuries from the actual sexual assaults.

**5.** It also states that it governs actions which would have been barred by statutes of limitations applicable prior to its enactment. However, this provision was found to be unconstitutional in *Doe v. Roman Catholic Diocese,* 862 S.W.2d 338, 342 (Mo. banc 1993).

operation of a statute of limitations which shortened the time for bringing certain medical malpractice actions on a claim which had accrued prior to the effective date of the statute. *Id.* at 890. If the *Goodman* statute had been held to apply to claims which existed at the time it was adopted, it would have barred some claims within a day or two of its effective date even though under the prior statute of limitations additional time was available to file suit. *Id.* at 891–92. Although the plaintiff in *Goodman* had two full years after the effective date of the statute to file suit, the Supreme Court found that to apply the statute to the plaintiff would "add something to the statute which simply [was] not there. Had the legislature intended to add saving language, it had many available models. It did not use them." *Id.* at 892.[6] The Supreme Court concluded that the statute shortening the statute of limitations should be applied only to claims accruing after its effective date. *Id.*

As with the statute in *Goodman*, §§ 516.371 and 537.046, RSMo Cum.Supp. 1993, do not include "saving language," in that neither statute provides a "reasonable time" in which to file suit upon existing claims. Following the analysis of *Goodman*, this court concludes that §§ 516.371 and 537.046, RSMo Cum.Supp.1993, can only be applied to claims accruing after their effective dates. Judith Swartz's causes of action against her mother and father were, therefore, timely filed within five years of her twenty-first birthday, in accordance with § 516.170, RSMo Cum.Supp.1993.

Judith Swartz's claims against Mr. Swartz are neither precluded by the doctrine of parental immunity nor barred by the applicable statutes of limitation. Likewise, Judith Swartz's claims against Ms. Van Beek are not barred by the applicable statute of limitations. An evidentiary hearing is required to determine whether an exception to the parental immunity doctrine applies to Judith Swartz's claims against Ms. Van Beek. Therefore, the trial court erred in granting

summary judgment in favor of Mr. Swartz and Ms. Van Beek. The summary judgment is reversed and the cause remanded for further proceedings.

## II.

The issues raised in Judith Swartz's point two were addressed when reversing the grant of summary judgment under point one. No further discussion is warranted.

## III. & IV.

In her third and fourth points on appeal, Judith Swartz claims the trial court erred in failing to grant her motion for summary judgment. In general, denial of a motion for summary judgment is not subject to appellate review, even when the appeal is taken from a final judgment. *Kabir v. Missouri Department of Social Services,* 845 S.W.2d 102, 103 (Mo.App.1993); *Chism v. Steffens,* 797 S.W.2d 553, 557 (Mo.App.1990); *Farmers and Merchants Ins. Co. v. Cologna,* 736 S.W.2d 559, 569–70 (Mo.App.1987). This case reveals, however, a limited circumstance under which such a review might occur.

An appellate court's review of summary judgment is essentially de novo, "as the appropriateness of a summary judgment is an issue of law." *Pennington v. Solovic,* 870 S.W.2d 440, 440 (Mo.App.1993). Inherent in the grant of summary judgment is the determination that there are no genuine issues of material fact. When reviewing a summary judgment, the appellate court may accept that there are no genuine issues of material fact, but find instead that there was an erroneous application of law. If a cross-motion has been filed by the opposing party, the correct application of law may dictate that the cross-motion for summary judgment be sustained. In effect, the reviewing court would be considering whether the trial court's denial of summary judgment to the respondent on the respondent's cross-motion was erroneous.

6. The Missouri Supreme Court noted that *In re Estate of McMahon,* 506 S.W.2d 389 (Mo.1974), which involved a shortening statute, the effective date of which the legislature postponed for one year, "demonstrates a method of applying a shortened statute of limitations to existing claims, while still affording claimants reasonable opportunity to file suit." *Goodman,* 687 S.W.2d at 892.

The trial court granted summary judgment in favor of Judith Swartz's parents based solely on facts relevant to its interpretation of the parental immunity doctrine. Judith Swartz now contests her denial of summary judgment, not on facts germane to parental immunity, but on entirely separate grounds. It is, therefore, necessary to ascertain whether the facts Judith Swartz relies upon are genuinely undisputed. Even by Judith Swartz's own account, however, it appears that the issues are clearly in dispute.

In her point three, Judith Swartz claims summary judgment was wrongly denied on her Count III because "all of the elements necessary for the tort of negligent infliction of emotional distress [were] undisputed." Judith Swartz alleges that Mr. Swartz negligently subjected her to emotional distress when he attempted to remove her from her home by force during the criminal investigation of Mr. Swartz's conduct. However, Mr. Swartz denies that he attempted to remove Judith Swartz from her home. He claims instead that he came to the home to pick up two other children. The facts are undoubtedly in dispute.

Likewise, Judith Swartz contends in her point four that the trial court erred in failing to grant her motion for summary judgment as to liability against Ms. Van Beek for negligent failure to procure medical treatment for her daughter. Judith Swartz argues that the evidence establishing Ms. Van Beek's liability was overwhelming. However, Judith Swartz has cited only conclusions, not detailed facts supported by the record. She also ignores Ms. Van Beek's recital of facts which dispute her conclusions. Therefore, Judith Swartz again fails to show that the facts are not in genuine dispute. Accordingly, we are precluded from reviewing denial of her motion for summary judgment. Points three and four are denied.

The order granting summary judgment to James Swartz and Pamela Van Beek is reversed. The cause is remanded to the trial court for entry of summary judgment in favor of Judith Swartz and against James Swartz on the affirmative defense of parental immunity and in favor of Judith Swartz and against James Swartz and Pamela Van Beek

on the affirmative defense of statute of limitation. On remand the trial court should conduct a hearing on Pamela Van Beek's affirmative defense of parental immunity. At that hearing the trial court should consider the impact on family harmony of the maintenance of this suit by Judith Swartz against Pamela Van Beek when determining whether there is an exception to parental immunity for Judith Swartz's cause of action.

All concur.